UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PETER J. WHALEN,<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONAL OCCUPATIONAL HEALTH STRATEGIES, LLC, a Missouri corporation, *et al.*,<br><br>    Defendants. | CASE NO. C05-915RSM<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT |

This matter is before the Court for consideration of defendants' motion for summary judgment (Dkt. # 59), which plaintiff has opposed, The Court has fully considered the memoranda and exhibits submitted by the parties, and, for the reasons set forth below, now denies the motion.

DISCUSSION

National Occupational Health Strategies ("NOHS") is a Missouri limited liability company specializing in occupational health management programs. It was founded by Scott Jones, a physician, and Lea Ann Sheriff, a registered nurse, in 2003. Another physician, Craig Heligman, bought an interest in the company in 2005. These three individuals are defendants in this action. In 2004, they entered into a working relationship with plaintiff Peter Whalen, regarding pursuit of a contract with the Union Pacific Railroad ("UPRR") for administration of UPRR's Physical Exam Management Program ("PEMP"). It is the nature and the terms of that working relationship which form the basis of this lawsuit.

Plaintiff, who has lived in the Seattle area throughout the period of this dispute, was contacted by

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 1

telephone in January of 2004 by Craig Heligman, who knew him from previous business connections. Defendants contemplated bidding on a million-dollar contract to provide occupational health services to UPRR, including the railroads's Physical Examination Management Program ("PEMP"). Defendants, who are health professionals, needed someone with business experience to manage the business aspects of the enterprise. Plaintiff began working for defendants under an independent contractor agreement ("ICA"), dated May 12, 2004, and signed by plaintiff as the independent contractor and by Lea Ann Sheriff and Scott Jones as "managing members" of NOHS. Plaintiff was also given a Letter of Intent, dated March 19, 2004, stating the parties' intent to employ plaintiff at a salary of $185,000 per year, plus bonuses, conditioned upon securing the UPRR contract. The Letter of Intent also described an opportunity for plaintiff to purchase a 10% interest in NOHS. The Letter of Intent stated that the terms of employment were subject to conditions to be set forth "in a definitive, legally binding, written agreement to be negotiated and entered into by NOHS and Whalen." Declaration of Peter Whalen, Exhibit B. Plaintiff never signed the Letter of Intent; he states that it did not correctly express the terms of the oral agreement he had reached with defendants by telephone, particularly as to his equity interest in NOHS. No written employment agreement was ever entered into by the parties. Nevertheless, plaintiff began working for defendants as an independent contractor to secure the UPRR contract. Under the ICA, plaintiff was paid at the rate of $6000 per month.

      Through spring and summer of 2004, plaintiff worked on the NOHS bid on the UPRR PEMP contract. It was projected that the contract would be worth between $2.5 million and $3.5 million. Plaintiff worked with CompassCare, a software company, to design a program for a health management information system, giving "real time" access to employee medical data. This information system, designated "Nexus", was an important aspect of the NOHS bid. The bid was submitted to UPRR in late June 2004, and the contract was awarded to NOHS on September 1, 2004. Several days later, plaintiff sent an e-mail to Greg Pohlman, who provided outside accounting services to NOHS, directing him to add plaintiff to the payroll as an employee at the salary of $185,000 per year. Declaration of Peter Whalen, Exhibit E. The e-mail was not copied to Scott Jones, Lea Ann Sheriff, or anyone in NOHS. *Id*. Plaintiff was paid at the rate of $185,000 per year for the month of September. On October 12, 2004,

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 2

Greg Pohlman e-mailed to plaintiff to discuss "a lower number" for plaintiff's salary for the next three months. Plaintiff e-mailed back and said he had agreed with Scott Jones "to take 6K out through the end of the year." Declaration of Amy Fowler, Exhibit B (Deposition of Peter Whalen), Exhibit 20.[1] Plaintiff was actually paid at the rate of $8,000 per month for the last three months of 2004, and for January of 2005. On January 19, 2005, plaintiff was informed his services were no longer needed by NOHS.

On these facts, plaintiff has sued defendants. Plaintiff's second amended complaint asserts claims for the torts of negligent misrepresentation, breach of contract, violation of the covenant of good faith and fair dealing, and wrongful termination, as well as a statutory claim for wrongful withholding of wages under RCW 49.48 *et. seq.*[2] Jurisdiction of this Court over these state law claims arises under 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds $75,000. Defendants have moved for summary judgment as to all claims.

## ANALYSIS

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotrex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. F.R.Civ. P. 56(e). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence is merely colorable or is not significantly probative, summary judgment may not

---

[1] Defendants in their motion describe this October 12 e-mail exchange as initiated by plaintiff. It appears from the times on the copies of the e-mails before the Court that Mr. Pohlman initiated the exchange at 11:17 a.m., and plaintiff responded at 2:25 p.m..

[2] The second amended complaint is not a model of clear and concise pleading with respect to the claims asserted. Plaintiff's claims for relief are not set forth separately, but appear in the body of the complaint. The Court has therefore construed ¶ ¶ 25 through 29 as plaintiff's statement of his claims.

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 3

be granted. *Id*. at 249-50.   It is not the court's function at the summary judgment stage to determine credibility or to decide the truth of the matter.   *Id*.   Rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."   *Id*. at 255.

In moving for summary judgment, defendants first assert that plaintiff's breach of contract claim is barred by the statute of frauds.  Defendants contend that "Washington's statute of frauds provides that any agreement, contract, or promise that, by its terms, cannot be performed within one year of its making is void unless the agreement, contract or promise is in writing." Motion for Summary Judgment, p. 14, *citing* RCW 19.36.010.   Plaintiff, in response, correctly asserts that the statute of frauds does not bar action on an oral contract for an indefinite period of time, and terminable at will.  *Purdy Mobile Homes, Inc., v. Champion Home Builders* Co*., * 523 F. Supp. 56, 63 (E.D.Wash. 1981).

Here, there are material factual disputes as to whether an employment contract existed and, if it did, what its terms were.  Plaintiff has declared, under penalty of perjury, that he and defendants came to a verbal agreement regarding the terms of his employment, and that Scott Jones promised him "on several occasions" that this agreement would be memorialized in writing.  Declaration of Peter Whalen, ¶¶ 16, 17, 19. Defendants deny this. Declaration of Amy Fowler, Exhibit C (Deposition of Scott Jones), pp. 92-93.   Plaintiff also asserts that the employment contract was for a term of three years.   Declaration of Peter Whalen,  ¶ 18.  While this term might put the employment contract squarely within the statute of frauds, defendants' denial of the existence of any verbal employment contract places this fact in dispute as well.   Indeed, defendants deny that plaintiff was ever an employee of NOHS.  However, they cannot deny that plaintiff was paid as an employee, not as an independent contractor, from September of 2004 onward.  The record includes W-2 forms demonstrating that plaintiff was paid as an employee, with income and other taxes withheld from his paycheck, during the time from September 2004 through January 2005.  Declaration of Peter Whalen, Exhibit H.  Scott Jones in his deposition denied any knowledge that plaintiff was being paid as an employee and was issued a W-2 form.  Declaration of Amy Fowler, Exhibit C (Deposition of Scott Jones), p, 118-120.   Yet also in the record is an e-mail from Scott Jones to plaintiff, dated September 29, 2004, stating,

> We have done everything to ensure your $185,000 pay based on our letter of intent.   That may need to be reduced temporarily until we get cash flow.  We further may need to reduce

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 4

other salaried employees to part time work until we get our 36% margin which is supposed to provide financial reward for Craig and Lea Ann also.

Declaration of Peter Whalen, Exhibit O.  This reference to plaintiff's "$185,000 pay" suggests that Scott Jones knew plaintiff was being paid as an employee as discussed in the letter of intent, despite plaintiff's failure to sign that letter.  Plaintiff, in response to this e-mail, agreed to reduce his "pay" to "6K per month" so that there would be sufficient money to hire another person. *Id.*, Exhibit P.  Plaintiff followed up with an e-mail to the accountant Greg Pohlman, as noted above, instructing him to reduce his pay accordingly.

This and other evidence in the record creates a material factual dispute as to whether plaintiff was or was not an employee, whether a verbal contract for employment existed, and if so, what the terms of that contract were.  This Court may not make credibility determinations to resolve these disputes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-50.  In addition, there is a factual dispute as to whether plaintiff became an equity partner in NOHS.  Although defendants deny that he was a partner, plaintiff was listed as a partner owning 20 percent of the company on a loan application signed by Scott Jones and Craig Heligman as well as plaintiff.  Declaration of Peter Whalen, Exhibit K.  Further, there is a cryptic note by plaintiff regarding a debt owed to Scott Jones for plaintiff's share in a "condo" which has not been discussed or explained by any party.  Declaration of Amy Fowler, Exhibit B (Deposition of Peter Whalen), deposition exhibit 20.

In view of these factual disputes, the Court cannot grant summary judgment to defendant on any of plaintiff's claims.  Defendant's motion for summary judgment (Dkt. # 59) is accordingly DENIED.

DATED this 21 Day of March 2007.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 5